## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., <br><br>                     Plaintiff, <br>            v. <br><br> QUANTA COMPUTER, INC., QUANTA STORAGE, INC., QUANTA COMPUTER USA, INC., and NUT TECHNOLOGY, INC., <br>                     Defendants. | M. A. 06- _____ <br><br> Civil Action No. 06-C-0462 Currently Pending in the U.S. District Court for the Western District of Wisconsin |

## DECLARATION OF MICHAEL JOFFRE IN SUPPORT OF RICOH COMPANY, LTD'S EMERGENCY MOTION TO ENFORCE ITS SUBPOENA

I, Michael Joffre, declare and state as follows:

1.     I am an associate at the law firm of Kellogg, Huber, Hansen Todd, Evans & Figel, P.L.L.C., and serve as counsel for plaintiff Ricoh Company, Ltd. ("Ricoh") in the action pending in the U.S. District Court for the Western District of Wisconsin between Ricoh and Quanta Storage Inc. ("QSI"). I submit this declaration in support of Ricoh's Emergency Motion to Enforce Its Subpoena to Dell. The facts stated herein are within my personal knowledge and, if called to testify as a witness, I could and would competently testify thereto.

2.     Attached as Exhibit A is a true and correct copy of the subpoena as it was served on Dell Inc. on March 20, 2007 by Ricoh.

3.     Attached as Exhibit B is a true and correct copy of the Complaint filed in *Ricoh Company, Ltd v. ASUSTek Computer Inc., et al.*, No. 06-0426 (W.D. Wisc. Aug. 24, 2006).

4.      Attached as Exhibit C is a true and correct copy of an email dated April 4, 2007, that K. Fetterman, counsel for Ricoh, sent to R. Holland, counsel for Dell.

5.      Attached as Exhibit D is a true and correct copy of an email dated April 4, 2007, that R. Holland sent to K. Fetterman.

6.      Attached as Exhibit E is a true and correct copy of an email dated April 4, 2007, that K. Fetterman sent to R. Holland.

7.      Attached as Exhibit F is a true and correct copy of an email dated April 13, 2007, that R. Holland sent to K. Fetterman.

8.      Attached as Exhibit G is a true and correct copy of a letter dated April 24, 2007, that R. Holland sent to K. Fetterman as it was received in our offices by fax.

9.      Attached as Exhibit H is a true and correct copy of a letter dated May 10, 2007, that J. Rozendaal, counsel for Ricoh, sent to R. Holland.

10.     Attached as Exhibit I is a true and correct copy of an email dated May 14, 2007, that R. Holland sent to K. Fetterman.

11.     Attached as Exhibit J is a true and correct copy of an email dated May 18, 2007, that R. Holland sent to counsel for Ricoh.

I declare under penalty of perjury that the foregoing statements are true and correct.

May 21, 2007                          _____
                                              Michael Joffre

Declaration of Michael Joffre in Support of Ricoh
Company, LTD's Emergency Motion to Enforce Its Subpoena

AO 88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD. | **SUBPOENA IN A CIVIL CASE** |
| v. | Case Number:[1] 06-C-0462<br>(Pending in the Western District of Wisconsin) |
| ASUSTEK COMPUTER INC., ASUS COMPUTER INTERNATIONAL, QUANTA COMPUTER INC., QUANTA STORAGE INC., QUANTA COMPUTER USA, INC., and NU TECHNOLOGY, INC. | |

TO:    Dell Inc.
       Care of:
       Corporation Service Company
       2711 Centreville Road, Suite 400
       Wilmington, DE 19808

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The topics on which your testimony is required are described in the attached **Exhibit A.**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Wilmington, DE-Exact location to be determined after conferring with counsel for Dell | 9:00 am<br>May 1, 2007 |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See **Exhibit B**

| PLACE | DATE AND TIME |
|---|---|
| Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Sumner Square, 1615 M Street, N.W., Ste. 400, Washington, D.C. 20036, | April 24, 2007 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below:

| PREMISES | DATE AND TIME |
|---|---|
| | |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_      Attorney For Plaintiff | March 19, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Ken Fetterman, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Sumner Square, 1615 M Street, N.W., Ste. 400 Washington, D.C. 20036, (202) 326-7900

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
|  |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
        (B) subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
        (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
        (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
        (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
        (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
        (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**Exhibit A**
**to Subpoena to Dell Inc.**

**INSTRUCTIONS**

Unless otherwise defined herein, each and every one of these topics listed pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure shall be governed by the instructions and definitions set out in Plaintiff's request for production of documents included as Exhibit B to the present subpoena.

**TOPICS ON WHICH TESTIMONY IS REQUESTED**

TOPIC NO. 1:    Documents produced by Dell Inc. in response to this subpoena.

TOPIC NO. 2:    Communications with Quanta Computer Inc., or Quanta Storage Inc., or Quanta Computer USA, Inc., or Philips, or Philips Taiwan, Ltd., or ASUSTeK Computer Inc., or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer, regarding Ricoh's Patents or the suit brought by Ricoh against Quanta Computer Inc., Quanta Storage Inc., Quanta Computer USA, Inc., ASUSTeK Computer Inc., ASUS Computer International, and NU Technology, Inc. on August 24, 2006, in the Western District of Wisconsin.

TOPIC NO. 3:    Communications with Quanta Computer Inc., or Quanta Storage Inc., or Quanta Computer USA, Inc., or Philips, or Philips Taiwan, Ltd., or ASUSTeK Computer Inc., or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer mentioning or regarding one or more of the following features of recordable/rewritable optical storage devices made by or purchased from Quanta Computer Inc., Quanta Storage Inc., or Quanta Computer USA, Inc., or Philips, or Philips Taiwan, Inc., or ASUSTeK Computer Inc., or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer:
    (a)  ZCLV;
    (b)  Buffer Underrun Protection or FlextraLink;
    (c)  Background Formatting; and/or
    (d)  Write Strategy.

TOPIC NO 4:    Method of operation and use by Dell Inc. of optical storage devices made by or purchased from Quanta Computer Inc., or Quanta Storage Inc., or Quanta Computer USA, Inc., or Philips, or Philips Taiwan, Ltd., or ASUSTeK Computer Inc., or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer., including but not limited to operation and use in connection with qualification, testing, or repair of such optical storage devices.

TOPIC NO. 5:    Method of operation and use in Dell Inc. products of one or more of the following features of recordable/rewritable optical storage devices made by or purchased from Quanta Computer Inc., Quanta Storage Inc., or Quanta Computer USA, Inc., or Philips, or Philips Taiwan, Inc., or ASUSTeK Computer Inc., or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer:
    (a)  ZCLV;
    (b)  Buffer Underrun Protection or FlextraLink;
    (c)  Background Formatting; and/or
    (d)  Write Strategy.

TOPIC NO. 6:    Any tests or analyses of optical storage devices made by or purchased from Quanta Computer Inc., or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUSTeK Computer Inc. or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer, including, but not limited to, any tests conducted by Dell to qualify the performance of optical storage devices made by or purchased from Quanta Computer Inc., or Quanta Storage Inc., or Quanta Computer USA, or Philips, or Philips Taiwan, or ASUSTeK Computer Inc., or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer.

<u>TOPIC NO. 7:</u>     The identity, content, and interpretation of documents sufficient to show efforts by Dell Inc. to sell, advertise or market any of the following features of recordable/rewritable optical storage devices, or to sell, advertise or market recordable/rewritable optical storage devices having one or more of these features:
(a)     ZCLV;
(b)     Buffer Underrun Protection or FlextraLink;
(c)     Background Formatting;
(d)     Write Strategy..

<u>TOPIC NO. 8:</u>     The identity, content, and interpretation of documents sufficient to show efforts to repair, general repair status, where repairs are done, and final testing before sale, of any optical storage drives containing one or more of the following features of recordable/rewritable optical storage devices:
(a)     ZCLV;
(b)     Buffer Underrun Protection or FlextraLink;
(c)     Background Formatting;
(d)     Write Strategy.

**Exhibit B**
**to Subpoena to Dell Inc.**

## INSTRUCTIONS

Pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, plaintiff Ricoh Company Ltd. ("Ricoh") hereby requests that Dell Inc. produce all documents and other tangible things specified below that are in its possession, custody, and/or control. All documents and tangible things responsive hereto should be produced for inspection and/or copying as soon as practicable and in no event later than 30 days after service of these document requests. Production shall be made at the offices of Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036, or as otherwise agreed to.

### I. Instructions

1.        All requests hereunder for the production of documents require production of the requested documents in full, without deletion, redaction, abbreviation, or expurgation.

2.        These discovery requests are continuing. All requests for the production of documents shall be construed to include any additional documents responsive to these requests which are discovered, acquired, created, or generated after the date upon which production is made.

3.        All documents should be produced in the order in which they appear in the files of HP, organized by source, and should contain a clear indication of where each document ends and the next begins. Documents which are found in boxes, file folders, bindings, or other containers are to be left intact as kept. Documents maintained in a file folder or binding should be preceded by the file folder or binding label, if one exists, and should contain a clear indication of where the file folder or binding begins and ends. All attachments to a document should be produced with the document. A unique control number should be affixed to each page. Computer files (including backup files), electronic mail messages, and other documents maintained in electronic form should be produced in machine-readable electronic form.

4.        With respect to any information that is not disclosed because that information is asserted to be immune from discovery as being privileged or protected under work product immunity, provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

5.    In the event that any document called for by this request has been destroyed, discarded, or otherwise disposed of, that document is to be identified as completely as possible, including, without limitation, the following information: the author(s) of the document(s); the name of the person(s) to whom the document(s) was (were) delivered or addressed, including indicated or blind copy recipients; the date of the document(s); the date and manner of disposal of the document(s); the reason(s) for and person(s) authorizing the disposal; the person(s) disposing of the document(s); and a description of the subject matter thereof, including any attachment or appendices, and the number of pages.

6.    If any request herein does not specify a time period for which information is sought, the request shall be construed as to seek all information without limitation that came into the custody of the defendant since the date six years preceding the date of filing of the complaint in the Western District of Wisconsin. The complaint was filed in the Western District of Wisconsin on August 24, 2006.

7.    For any request calling for "documents sufficient to show" or "documents sufficient to identify," if documents sufficient to show or identify the subject matter of the request are in English, such English documents should be produced rather than documents in a foreign language.

## II. Definitions

1.    The term "Dell Inc." shall mean Dell Inc. a Delaware corporation, and includes, without limitation, (a) any of its divisions, departments, or other organizational or operational units; (b) all of its predecessor or successor companies or corporations, and subsidiaries or any corporation that is a subsidiary; (c) present and former officers, directors, employees, consultants, agents, attorneys, or others acting or purporting to act on its behalf.

2.    The term "Dell Inc. products" shall mean Dell notebook computers, Dell laptop computers, Dell desktop computers, and any other products sold by Dell that contain optical storage devices, including add-on, spare, refurbished, or replacement optical storage devices.

3.    The term "Ricoh" shall mean Ricoh Company, Ltd., as well as any agents, affiliates, or other persons acting on its behalf.

4.    The phrase "subject matter," when used in relation to a patent, means all products, processes, services, technology, implementation, uses, and other matter covered by one or more claims of that patent.

5.    "All" means all or any, and "any" means all or any.

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be outside its scope.

7.      "Include" or "including" denotes a portion of a larger whole and is used without limitation.

8.      "Concerning" or "concerns" means relating to, referring to, consisting of, reflecting, discussing, constituting, describing, analyzing, studying, evidencing, incorporating, or in any way pertaining to or having any logical or factual connection to any matter alleged in the Complaint.

9.      "Relating to" means in whole or in part, constituting, containing, referring to, discussing, dealing with, describing, reflecting, or pertaining to in any way whatsoever.

10.     "Document" shall have the full meaning ascribed under the Federal Rules of Civil Procedure and shall mean, without limitation, any written, recorded, or graphic material of any kind within your possession, custody or control, whether in paper or electronic form. The term includes, but is not limited to, all agreements; contracts; letters; telegrams; interoffice communications; facsimile transmissions; memoranda; reports; records; studies; instructions; specifications; handwritten or typewritten notes; notebooks; scrapbooks; diaries; calendars; plans; drawings; sketches; diagrams; minutes of meetings, conferences and telephone or other conversations; photocopies; charts; graphs; descriptions; drafts; ledgers; financial statements or reports; invoices; bills; microfilm, microfiche, tape, disk, or diskette recordings; computer records and computer printouts. The term "document" includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers (any such document is to be produced in a reasonably legible and usable form) — including, without limitation, email stored in servers and on hard disks of personal computers, listings of computer code, netlists, and digitized topographic information concerning integrated circuits. The term "document" also includes the original document (or an identical copy thereof if the original is not available) and all copies that differ in any respect from the original as a result of any notation, symbol, number, lettering, underlining, marking or other information appearing thereon, and all attachments thereto, and also includes English translations of documents requested herein whenever such translations exist in whole or in part for a document or portion thereof.

11.     The term "Person" means a natural person, corporation, or other business organization.

12.     "NU Taiwan" means NU Inc., a Taiwanese corporation, any corporate predecessor or corporate successor thereof, any subsidiaries thereof, and any corporation of which it is a subsidiary.

13.     "NU" means NU Technology, Inc., a California corporation, any corporate predecessor or

corporate successor thereof, any subsidiaries thereof, and any corporation of which it is a subsidiary.

14.    "ASUS" means any one or more of ASUSTeK Computer Inc., a Taiwanese corporation, and ASUS Computer International, a California corporation, any corporate predecessor or corporate successor thereof, any subsidiaries thereof, and any corporation of which it is a subsidiary.

15.    "Quanta Storage Inc." means Quanta Storage Inc., a Taiwanese corporation, any corporate predecessor or corporate successor thereof, any subsidiaries thereof, and any corporation of which it is a subsidiary.

16.    "Quanta" means Quanta Computer Inc., a Taiwanese corporation, any corporate predecessor or corporate successor thereof, any subsidiaries thereof, and any corporation of which it is a subsidiary.

17.    "Quanta USA" means Quanta Computer USA, Inc., a California corporation, any corporate predecessor or corporate successor thereof, any subsidiaries thereof, and any corporation of which it is a subsidiary.

18.    The term "Philips" shall mean one or more of the third-party defendants Philips Taiwan, Ltd. ("Philips Taiwan") and Business Line Data, Philips Optical Storage ("POS-BLD"), and includes, without limitation, (a) any of its divisions, departments, or other organizational or operational units; (b) all of its predecessor or successor companies or corporations; (c) present and former officers, directors, employees, consultants, agents, attorneys, or others acting or purporting to act its behalf.

19.    "Ricoh Patents" mean the U.S. patents that Ricoh has asserted in this action against the defendants, namely, U.S. Patent Nos. 5,063,552, 6,172,955, 6,631,109, and 6,661,755.

20.    "Optical storage device" and "optical storage drive" means a machine that records (writes) information to and reproduces (reads) information from a recordable and/or a re-writable CD (commonly referred to as CD-R/RW) or a recordable and/or re-writable DVD (commonly referred to as DVD±R/±RW).

21.    "Sales" means gross sales, in units and in U.S. dollars or other identified currencies, made since January 1, 2000. "Total U.S. Drive Sales" means Sales that a defendant made to customers in the United States, whether directly or via a subsidiary or agent, and in addition Total U.S. Drive Sales include Sales made under a private label, name, or logo, and Sales made under no label, name, or logo.

22.    "Operation Code" means the computer code programmed into a Drive (and/or any integrated circuit therein or utilized therewith) by means of stored software, firmware and/or hardware, or that a defendant made available on the Internet, to carry out an operation or operations (such operation being described in the discovery request), including, without limitation, the object code (machine language), assembly code, and any and

-6-

all higher level language code, including comments thereon (for example, VHDL [Very high speed integrated circuit hardware description language]) from which the foregoing object code was assembled or compiled, together with the mnemonics and microinstruction set for the computer code, as well as firmware and/or hardware implementations of Operation Code, and including each revision thereof.

23.     With regard to Operation Code, "Related Documentation" means the logic diagrams, flow diagrams, and flowcharts associated with, or used in the design of, such Operation Code; and all descriptive or explanatory documentary material relating to it, including without limitation and engineering specifications, software specifications, service manuals and material provided to technical writers in connection with creating documentation related to NU Drives such as service manuals and operator manuals.

24.     "ZCLV Product" means any product in connection with the sale or promotion of which Dell Inc. or any optical storage device manufacturer has stated (in promotional material, data sheets, product specifications, or otherwise) that ZCLV (or Zone-CLV) is a feature of the product.

25.     "Buffer Underrun Protection" has the meaning given thereto in the promotional material available at: http://support.dell.com/support/edocs/storage/p53316/intro.htm.

26.     "Buffer Underrun Protection Product" means any product in connection with the sale or promotion of which Dell Inc. or any optical storage device manufacturer has stated (in promotional material, data sheets, product specifications, or otherwise) that Buffer Underrun Protection is a feature of the product.

27.     "Write Strategy" (also termed "writing strategy") means the manner and steps by means of which is determined in an optical storage device the power level, number of pulses, duration of pulses, and/or pulse duty cycle to use when recording (writing) information on an optical storage disc, including, without limitation, the durations of electrical pulses in the waveforms driving the laser diode to record (write) marks on optical discs such as, without limitation, CDs or DVDs.

28.     "DVD+R Basic Format Specifications" refers to the specifications for the DVD+R System, as specified in the document "DVD+R 4.7 Gbytes Basic Format Specifications," version 1.0 of January 2002, or any updated version thereof as defined by the DVD+RW Format Group.

29.     "DVD+RW Basic Format Specifications" refers to the specifications for the DVD+RW System, as specified in the document "DVD+RW 4.7 Gbytes Basic Format Specifications," version 1.0 of March 2001, or any updated version thereof, as defined by the DVD+RW Format Group.

30.    "DVD-R Standard Specifications" shall mean the "DVD Specifications for Recordable Disc for General (DVD-R for General), Part 1 Physical Specifications," the "DVD Specifications for Recordable Disc for General (DVD-R for General), Part 2 File System Specifications," and the "DVD Specifications for DVD-RAM/DVD-RW/DVD-R for General Discs), Part 3 Video Recording," or any updated version thereof as defined by the DVD Forum and issued by the DVD Format/Logo Licensing Corporation.

31.    "DVD-RW Standard Specifications" shall mean the "DVD Specifications for Re-recordable Disc (DVD-RW), Part 1 Physical Specifications," the "DVD Specifications for Re-recordable Disc (DVD-RW), Part 2 File System Specifications," and the "DVD Specifications for DVD-RAM/DVD-RW/DVD-R for General Discs), Part 3 Video Recording," or any updated version thereof as defined by the DVD Forum and issued by the DVD Format/Logo Licensing Corporation.

32.    "DVD+RW Compliant Product" means any Drive that records or writes information on optical discs in a manner that conforms to, or complies with, the DVD+RW Specification, or any portion thereof.

33.    "DVD±R/±RW Compliant Product" means any Drive that records or writes information on any optical disc (whether the disc is single layer or multiple layer) in a manner that conforms to, or complies with any one of the DVD+R Basic Format Specifications, DVD+RW Basic Format Specifications, DVD-R Standard Specifications, and DVD-RW Standard Specifications, or any portion thereof.

34.    "Background Formatting" means a process comprising the steps of commencing a formatting operation on a DVD, thereafter pausing the formatting operation while recording or reproducing information on the DVD, and then resuming the formatting operation after recording or reproducing the information on the DVD.

35.    "Background Formatting Product" means any optical storage device that performs Background Formatting.

36.    "Pioneer" means Pioneer Corporation, a corporation organized under the laws of Japan, Pioneer North America and Pioneer Electronics (USA) Inc., any corporate successor thereof, any subsidiaries thereof, and any corporation of which it is a subsidiary.

37.    "FlextraLink" refers to the product feature that ASUS has so designated in its promotional material, an example of which is available at http://usa.asus.com/products.aspx?l1 =6&l2=33&l3=0&model=5&modelmenu=1 (last viewed December 13, 2006).

38.    "FlextraLink Product" means any product in connection with the sale or promotion of which

-8-

ASUS has stated (in promotional material, data sheets, product specifications, or otherwise) that FlextraLink is a feature of the product.

## DOCUMENTS REQUESTED

Request No. 1:    All communications between Dell Inc. and Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU or NU Taiwan, or Pioneer regarding the lawsuit filed by Ricoh on August 24, 2006, in the Western District of Wisconsin.

Request No. 2:    All communications between Dell Inc. and Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU, or NU Taiwan, or Pioneer, regarding Ricoh's Patents.

Request No. 3:    All Joint Defense agreements between Dell Inc. and Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU, or NU Taiwan, or Pioneer.

Request No. 4:    All indemnification agreements between Dell Inc. and Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU, or NU Taiwan, or Pioneer, regarding any liability for patent infringement by optical storage devices.

Request No.5:  All communications between Dell, Inc., and Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU or NU Taiwan, or Pioneer regarding recordable/rewritable optical storage devices made by or for Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU or NU Taiwan, or Pioneer, other than individual purchase orders or invoices.

Request No.6:  All communications between Dell, Inc., Quanta, or Quanta Storage Inc., or Quanta USA., or Philips, or, Philips Taiwan, or ASUS, or NU or NU Taiwan, or Pioneer mentioning or regarding one or more of the following features of recordable/rewritable optical storage devices made by or purchased from Quanta Computer Inc., Quanta Storage Inc., or Quanta Computer USA, Inc., or Philips, or Philips Taiwan, Inc., or ASUSTeK Computer Inc., or ASUS Computer International, or NU Taiwan, or NU Technology, Inc., or Pioneer:
      (a)ZCLV;
      (b)Buffer Underrun Protection or FlextraLink;
      (c)Background Formatting; and/or
      (d)Write Strategy.

Request No. 7:    Documents sufficient to show the method of operation and use by Dell Inc., or in Dell Inc. products, of optical storage devices made by or purchased from Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU, or NU Taiwan, or Pioneer, including but not limited to operation and use in connection with qualification, testing, or repair of such optical storage devices.

Request No. 8:    Documents sufficient to show the identity (including, without limitation, model numbers), price and quantity of each ZCLV Product, Background Formatting Product, Buffer Underrun Protection Product, and FlextraLink Product purchased by Dell Inc. from Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU, or NU Taiwan since August 24, 2000.

Request No. 9:    For each ZCLV Product, Background Formatting Product, Buffer Underrun Protection Product, FlextraLink Product made by or purchased from Quanta, Quanta Storage Inc., Quanta USA, Philips, Philips Taiwan, Pioneer, ASUS, NU Taiwan, or NU, documents sufficient to show each step that such product performs or performed to carry out the ZCLV, Background Formatting, Buffer Underrun Protection or FlextraLink feature respectively.

Request No. 10:  Each document mentioning, describing, or discussing the creation, design, or development or existence of the technology that Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU, or NU Taiwan, or Pioneer has designated as FlextraSpeed, ZCLV, Background Formatting, Buffer Underrun Protection, and Write Strategy.

Request No. 11:  For each model of optical storage device purchased by Dell Inc. from Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU, or NU Taiwan, or Pioneer, documents sufficient to show that optical storage device's Write Strategy.

Request No. 12:  Documents sufficient to identify employees of Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU Taiwan, or NU, or Pioneer, that sell, promote, or market any optical storage device to Dell Inc. or have met with employees of Dell Inc. in connection therewith.

Request No. 13:  All marketing and sales and technology presentations or specifications from Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU Taiwan, or NU, or Pioneer, regarding optical storage devices that mention, describe or discuss the technology designated as ZCLV, Background Formatting, Buffer Underrun Protection, Write Strategy, and FlextraLink.

Request No. 14:  Documents sufficient to describe tests or analyses of optical storage devices provided from Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU Taiwan, or NU, or Pioneer, to Dell, including, but not limited to, any tests conducted by Dell to qualify the performance of optical storage devices provided from Quanta, or Quanta Storage Inc., or Quanta USA, or Philips, or Philips Taiwan, or ASUS, or NU Taiwan, or New Universe, or NU, or Pioneer, to Dell.

Request No. 15:  All documents relating to efforts by Dell to sell, advertise or market optical storage drives to third parties that mention one or more of the following features of recordable/rewritable optical storage devices:
(a)     ZCLV;
(b)     Buffer Underrun Protection or FlextraLink;
(c)     Background Formatting;
(d)     Write Strategy.

Request No. 16:  Documents sufficient to show efforts by Dell to repair, general repair status, where repairs are done, and final testing before sale to a third party, of any optical storage drives (including but not limited to the Specified Products) containing one or more of the following features of recordable/rewritable optical storage devices:
(a)     ZCLV;
(b)     Buffer Underrun Protection or FlextraLink;
(c)     Background Formatting;
(d)     Write Strategy.

# EXHIBIT B

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

RICOH COMPANY, LTD., a Japanese corporation

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Lathrop & Clark LLP, 740 Regent Street, Ste. 400, P.O. Box 1507, Madison, WI 53701-1507  (608) 257-7766

## DEFENDANTS

ASUSTEK COMPUTER, INC., ASUS COMPUTER INTERNATIONAL, QUANTA COMPUTER INC., QUANTA*

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorney's (If Known)

*STORAGE INC., QUANTA COMPUTER USA, INC., NEW UNIVERSE TECHNOLOGY, INC., and NU TECHNOLOGY, INC.

DOC NO
E-FILED
2006 AUG 24  PM 4: 05
____ OWENS
CLERK US DIST COURT
WD OF WI
06 C 0462 C

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. 271

Brief description of cause:
This is an action for patent infringement.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE
08/24/2006

SIGNATURE OF ATTORNEY OF RECORD
_Kenneth B. A____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| WESTERN | District of | WISCONSIN |
|---|---|---|

RICOH COMPANY, LTD.,

**SUMMONS IN A CIVIL ACTION**

V.

ASUSTEK COMPUTER INC., et al.,

CASE NUMBER:

06 C 0462 C

TO: (Name and address of Defendant)

New Universe Technology, Inc.
2F-6 / No. 5, Alley 22, Lane 513
Run Guang Road
Taipei 114
Taiwan, R.O.C.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kenneth B. Axe, Esq.
Lathrop & Clark LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

THERESA M. OWENS                                     AUG 2 4 2006

| CLERK | DATE |
|---|---|

MICHELLE C BRIGGS

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____  _____
               *Date*                     *Signature of Server*

                                      _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| WESTERN | District of | WISCONSIN |
|---|---|---|

RICOH COMPANY, LTD.,

## SUMMONS IN A CIVIL ACTION

V.

ASUSTEK COMPUTER INC., et al.,

CASE NUMBER:

06 C 0462 C

TO: (Name and address of Defendant)

NU Technology, Inc.
4044 Clipper Court
Fremont, CA 94538

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kenneth B. Axe, Esq.
Lathrop & Clark LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

THERESA M. OWENS                                      AUG 2 4 2006

CLERK                                                          DATE

MICHELLE C BRIGGS

(By) DEPUTY CLERK

✎AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____   _____
                Date                  *Signature of Server*

_____
                   *Address of Server*

_____
(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

✎AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____WESTERN_____    District of    _____WISCONSIN_____

RICOH COMPANY, LTD.,

**SUMMONS IN A CIVIL ACTION**

V.

ASUSTEK COMPUTER INC., et al.,

CASE NUMBER:

06 C 0462 C

TO: (Name and address of Defendant)

ASUSTek Computer Inc.
150 Li-Te Road
Peitou, Taipei 112
Taiwan, R.O.C.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kenneth B. Axe, Esq.
Lathrop & Clark LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

THERESA M. OWEN                                    AUG 2 4 2006

_____        _____
CLERK          MICHELLE C BRIGGS                 DATE

_____
(By) DEPUTY CLERK

✎AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

  Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                    Date                          *Signature of Server*


                                   _____
                                        *Address of Server*


(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

✎AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| WESTERN | District of | WISCONSIN |
|---|---|---|

RICOH COMPANY, LTD.,

**SUMMONS IN A CIVIL ACTION**

V.

ASUSTEK COMPUTER INC., et al.,

CASE NUMBER:

## 06 C 0462 C

TO: (Name and address of Defendant)

ASUS Computer International
44370 Nobel Drive
Fremont, CA 94538

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kenneth B. Axe, Esq.
Lathrop & Clark LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

AUG 2 4 2006

THERESA M. OWENS

CLERK                                                   DATE

MICHELLE C BRIGGS

(By) DEPUTY CLERK

✎AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL  $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                          *Date*                            *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

WESTERN          District of          WISCONSIN

RICOH COMPANY, LTD.,

**SUMMONS IN A CIVIL ACTION**

V.

ASUSTEK COMPUTER INC., et al.,

CASE NUMBER:

06 C 0462 C

TO: (Name and address of Defendant)

Quanta Computer Inc.
No. 211 Wen Hwa 2nd Road
Kuei Shen Hsiang
Tao Yuan Shien
Taiwan, R.O.C.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kenneth B. Axe, Esq.
Lathrop & Clark LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

THERESA M. OWENS                                AUG 2 4 2006

CLERK          MICHELLE C BRIGGS                DATE

(By) DEPUTY CLERK

🖎AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[(1)] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

     Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

     I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on   _____    _____
                   Date              *Signature of Server*

                                   _____
                                   *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ WESTERN _____    District of    _____ WISCONSIN _____

RICOH COMPANY, LTD.,

**SUMMONS IN A CIVIL ACTION**

V.

ASUSTEK COMPUTER INC., et al.,

CASE NUMBER:

06 C 0462 C

TO: (Name and address of Defendant)

Quanta Storage Inc.
No. 188 Wen Hwa 2nd Road
Kuei Shen Hsiang
Tao Yuan Shien
Taiwan, R.O.C.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kenneth B. Axe, Esq.
Lathrop & Clark LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

THERESA M. OWENS

MICHELLE C BRIGGS

CLERK

AUG 2 4 2006

DATE

(By) DEPUTY CLERK

✎AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                Date                         *Signature of Server*

                                    _____
                                      *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

☙AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| WESTERN | District of | WISCONSIN |

RICOH COMPANY, LTD.,

### SUMMONS IN A CIVIL ACTION

V.

ASUSTEK COMPUTER INC., et al.,

CASE NUMBER:

06 C 0462 C

TO: (Name and address of Defendant)

Quanta Computer USA, Inc.
45630 Northpore Loop
East Fremont, CA 94538

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kenneth B. Axe, Esq.
Lathrop & Clark LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

THERESA M. OWENS

AUG 2 4 2006

CLERK    MICHELLE C BRIGGS    DATE

(By) DEPUTY CLERK

✎AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

  I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                          Date                          *Signature of Server*


                                        _____
                                                      *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

DOC NO
IN THE UNITED STATES DISTRICT COURT REC'D/FILED
FOR THE WESTERN DISTRICT OF WISCONSIN
2006 AUG 24  PM 4: 05

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

RICOH COMPANY, LTD.,

                Plaintiff,

       v.

ASUSTEK COMPUTER INC.,

ASUS COMPUTER INTERNATIONAL,

QUANTA COMPUTER INC.,

QUANTA STORAGE INC.,

QUANTA COMPUTER USA, INC.,

NEW UNIVERSE TECHNOLOGY, INC.,

and

NU TECHNOLOGY, INC.

                Defendants.

06 C 0462 C

CIV. ACTION NO. _____

DEMAND FOR JURY TRIAL

## COMPLAINT FOR DAMAGES AND INJUNCTIVE
## RELIEF FOR PATENT INFRINGEMENT

Plaintiff, Ricoh Company, Ltd. ("Ricoh"), complains of defendants, ASUSTeK Computer

Inc. ("ASUS"), ASUS Computer International ("ASUS International"), Quanta Computer Inc.

("Quanta"), Quanta Storage Inc. ("QSI"), Quanta Computer USA, Inc. ("Quanta USA"), New

Universe Technology, Inc. ("NUT"), and Nu Technology, Inc. ("NUI") as follows, and demands

a jury trial of all issues.

## THE PARTIES

1.     The plaintiff, Ricoh, is a Japanese corporation.  Ricoh is the owner of record of

the patents involved in this action.  Ricoh designs, makes, and/or sells, among other things,

optical storage products.

2.    Defendant ASUS is a Taiwanese corporation which has an office at 150 Li-Te Road, Peitou, Taipei 112, Taiwan, R.O.C.  On information and belief, ASUS is a manufacturer and/or seller, among other things, of optical storage devices, and ships or causes them to be shipped to the United States.

3.    Defendant ASUS International is a California corporation which has an office at 44370 Nobel Drive, Fremont, CA 94538.  On information and belief, ASUS International is a seller, among other things, of optical storage devices, and sells them within the United States. On information and belief, defendant ASUS wholly owns and controls defendant ASUS International and uses it as a conduit for the U.S. sale of products that ASUS manufactures. (Defendants ASUS and ASUS International are referred to hereinafter collectively as the "ASUS defendants.").

4.    Defendant Quanta is a Taiwanese corporation which has an office at No. 211 Wen Hwa 2nd Road, Kuei Shen Hsiang, Tao Yuan Shien, Taiwan, R.O.C.  Ricoh believes that after reasonable opportunity for further investigation or discovery it will have evidentiary support that Quanta is a manufacturer and distributor, among other things, of computer equipment including optical storage devices, and sells them within the United States.

5.    Defendant QSI is a Taiwanese corporation which has an office at No. 188 Wen Hwa 2nd Road, Kuei Shen Hsiang, Tao Yuan Shien, Taiwan, R.O.C.  QSI is a manufacturer and/or seller, among other things, of optical storage devices, and ships or causes them to be shipped to the United States.  On information and belief, defendant Quanta partially owns and controls defendant QSI, directly or via intermediaries.

6.      Defendant Quanta USA is a California corporation which has an office at 45630 Northpore Loop, East Fremont, CA 94538. On information and belief, Quanta USA uses, repairs and/or reconstructs, among other things, optical storage devices, at its factories in California. On information and belief, Quanta wholly owns and controls defendant Quanta USA, directly or via intermediaries. Ricoh believes that after reasonable opportunity for further investigation or discovery it will have evidentiary support that Quanta USA is a manufacturer and distributor, among other things, of computer equipment, including optical storage devices, and sells them within the United States.

7.      Defendant NUT is a Taiwanese corporation which has an office at 2F-6 / No 5, Alley 22, Lane 513, Run Guang Rd, Taipei 114, Taiwan, R.O.C. On information and belief, NUT is a manufacturer and/or seller, among other things, of optical storage devices, and ships them to the United States. On information and belief, defendant NUT originated as the Consumer Division of defendant QSI. On information and belief, defendant Quanta wholly owned and controlled defendant NUT, directly or via intermediaries, at least until March 2005.

8.      Defendant NUI is a California corporation which has an office at 4044 Clipper Court, Fremont, CA 94538. On information and belief, NUI is a manufacturer and wholesaler, among other things, of optical storage devices, and sells them within the United States. On information and belief, defendant NUT wholly owns and controls NUI, directly or via intermediaries. On information and belief, defendant Quanta wholly owned and controlled defendant NUI, directly or via intermediaries, at least until March 2005. (Defendants Quanta, QSI, Quanta USA, NUT, and NUI are referred to hereinafter collectively as the "Quanta defendants.").

-3-

## JURISDICTION AND VENUE

9.      This is an action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. § 271. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     The defendants knowingly and intentionally participated in a stream of commerce between Taiwan, China, and the United States, including a portion of such stream going from Taiwan or China to the Western District of Wisconsin, such stream of commerce including optical storage devices (hereinafter the "accused products") that are accused in this Complaint of infringing Ricoh's patents, as asserted in greater detail hereinafter. Defendants manufactured such devices or caused them to be manufactured and caused them to be shipped to the United States. Defendants imported such devices, or caused them to be imported, into the United States, and then sold and offered them for sale, or caused them to be sold and offered for sale, in the United States, including to customers in the Western District of Wisconsin, to the injury of the plaintiff, in this district, and in violation of the United States patent laws, as described in more detail hereinafter. Defendants did so through intermediaries that such defendants purposefully selected and via a distribution channel that such defendants intentionally established. In establishing this stream of commerce and distribution channel, the defendants acted in concert with distributors whom they selected, including retailers and other resellers of their products, who sold and delivered the accused products in this judicial district.

11.     The defendants have obtained financial gain from their trafficking in the accused products. The defendants have sought and obtained a benefit from sales of such products in this district, and have sought and obtained the benefits of the protection of Wisconsin law. The

-4-

defendants reasonably anticipated that some of such products would end up in this district and be sold therein.

       12.    This Court has personal jurisdiction over the defendants.  Venue is proper in this district.

## COUNT I – FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Infringement of U.S. Patent No. 5,063,552)

       13.    Ricoh realleges and incorporates by reference the allegations of paragraphs 1-12.

       14.    On November 5, 1991, the United States Patent and Trademark Office duly and legally issued to Ricoh U.S. Patent No. 5,063,552, titled "Optical disk apparatus with data transfer rate and rotational speed variable by annular zones."  Ricoh has owned the patent at all times since then.  The patented invention is directed to a system and a method for adjusting operation of an optical disk drive to permit recording and reproduction of information on annular tracks of an optical storage disk in a manner such that the respective linear speeds of recording or reproducing information are substantially constant within respective annular zones of the disc and the rotational speed of the disk varies accordingly.

       15.    The defendants have appropriated the invention and sell or offer for sale disk drives embodying it, including, without limitation, ASUS DRW-0804P Drives (by the ASUS defendants) and QSI SBW-242 Drives and QSI SDW-082 Drives (by the Quanta defendants). The defendants have been and still are infringing the foregoing patent by doing the following things, among others:

       (a)    making or causing to be made optical storage devices that embody the patented system and perform the patented method as part of their normal and intended operation, shipping such devices, or causing them to be shipped, to the United

-5-

States, and importing such devices, or causing them to be imported, into the United States, in violation of 35 U.S.C. § 271(a);

(b)     offering to sell and selling such devices, or causing them to be offered for sale and sold, in the United States, including, without limitation, in this district, in violation of 35 U.S.C. § 271(a);

(c)     contributing to infringement of the patent by selling such devices, knowing them to be specially adapted for practicing the patented invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, and knowing of the aforesaid patent, in violation of 35 U.S.C. § 271(c);

(d)     actively inducing infringement of the patented system and patented method by knowingly selling such devices, and in advertising and promotional materials knowingly advising and urging customers to use the patented invention, in violation of 35 U.S.C. § 271(b); and

(e)     aiding and abetting other persons to infringe and cause infringement of the patent.

16.     Such infringement has injured and damaged Ricoh.  Unless enjoined by this Court, the defendants will continue their infringement, irreparably injuring Ricoh.

17.     Ricoh has demanded of the defendants that they pay it a royalty or else desist from their infringing use of the invention, but the defendants have failed and refused to do either.

**COUNT II – SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**(Infringement of U.S. Patent No. 6,172,955)**

18.     Ricoh realleges and incorporates by reference the allegations of paragraphs 1-12.

19.     On January 9, 2001, the United States Patent and Trademark Office duly and legally issued to Ricoh U.S. Patent No. 6,172,955, titled "Optical disc recording and reproducing

-6-

apparatus for performing a formatting process as a background process and a method for formatting an optical disc by a background process." Ricoh has owned the patent at all times since then. The patented invention is directed to a system and a method for adjusting operation of an optical disk drive to format an optical storage disc as a background process while still allowing a user immediate access to recording information on the disc or reproducing information from the disc.

20.     The defendants have appropriated the invention and sell disk drives embodying it, including, without limitation, ASUS DRW-0804P Drives (by the ASUS defendants) and QSI SDW-082 Drives (by the Quanta defendants). The defendants have been and still are infringing the foregoing patent by doing the following things, among others:

(a)     making or causing to be made optical storage devices that embody the patented system and perform the patented method as part of their normal and intended operation, shipping such devices, or causing them to be shipped, to the United States, and importing such devices, or causing them to be imported, into the United States, in violation of 35 U.S.C. § 271(a);

(b)     offering to sell and selling such devices, or causing them to be offered for sale and sold, in the United States, including, without limitation, in this district, in violation of 35 U.S.C. § 271(a);

(c)     contributing to infringement of the patent by selling such devices, knowing them to be specially adapted for practicing the patented invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, and knowing of the aforesaid patent, in violation of 35 U.S.C. § 271(c);

-7-

(d)     actively inducing infringement of the patented system and patented method by knowingly selling such devices, and in advertising and promotional materials knowingly advising and urging customers to use the patented invention, in violation of 35 U.S.C. § 271(b); and

(e)     aiding and abetting other persons to infringe and cause infringement of the patent.

21.     Such infringement has injured and damaged Ricoh.  Unless enjoined by this Court, the defendants will continue their infringement, irreparably injuring Ricoh.

22.     Ricoh has demanded of the defendants that they pay it a royalty or else desist from their infringing use of the invention, but the defendants have failed and refused to do either.

## COUNT III – THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Infringement of U.S. Patent No. 6,631,109)

23.     Ricoh realleges and incorporates by reference the allegations of paragraphs 1-12.

24.     On October 7, 2003, the United States Patent and Trademark Office duly and legally issued to Ricoh U.S. Patent No. 6,631,109, titled "Optical recording method and apparatus, and optical storage medium."  Ricoh has owned the patent at all times since then.  The patented invention is directed to a system and a method for a high-speed write strategy when recording ("writing") information on an optical storage disc, the strategy being to utilize a predetermined combination of laser pulses, durations, and intensity levels such that it produces a desired quality of information recording and reproduction.

25.     The defendants have appropriated the invention and sell optical disk drives embodying it, including, without limitation, ASUS DRW-0804P Drives and ASUS CRW-5232 Drives (by the ASUS defendants) and QSI SBW-242 Drives and QSI SDW-082 Drives (by the

-8-

Quanta defendants). The defendants have been and still are infringing the foregoing patent by doing the following things, among others:

(a)     making or causing to be made optical storage devices that embody the patented system and perform the patented method as part of their normal and intended operation, shipping such devices, or causing them to be shipped, to the United States, and importing such devices, or causing them to be imported, into the United States, in violation of 35 U.S.C. § 271(a);

(b)     offering to sell and selling such devices, or causing them to be offered for sale and sold, in the United States, including, without limitation, in this district, in violation of 35 U.S.C. § 271(a);

(c)     contributing to infringement of the patent by selling such devices, knowing them to be specially adapted for practicing the patented invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, and knowing of the aforesaid patent, in violation of 35 U.S.C. § 271(c);

(d)     actively inducing infringement of the patented system and patented method by knowingly selling such devices, and in advertising and promotional materials knowingly advising and urging customers to use the patented invention, in violation of 35 U.S.C. § 271(b); and

(e)     aiding and abetting other persons to infringe and cause infringement of the patent.

26.     Such infringement has injured and damaged Ricoh. Unless enjoined by this Court, the defendants will continue their infringement, irreparably injuring Ricoh.

27.    Ricoh has demanded of the defendants that they pay it a royalty or else desist from their infringing use of the invention, but the defendants have failed and refused to do either.

## COUNT IV – FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Infringement of U.S. Patent No. 6,661,755)

28.    Ricoh realleges and incorporates by reference the allegations of paragraphs 1-12.

29.    On December 9, 2003, the United States Patent and Trademark Office duly and legally issued to Ricoh U.S. Patent No. 6,661,755, titled "Optical disc apparatus." Ricoh has owned the patent at all times since then. The patented invention is directed to a method for adjusting operation of an optical disk drive to permit efficient recording on the disk.

30.    The defendants have appropriated the invention and sell disk drives embodying it, including, without limitation, ASUS DRW-0804P Drives and ASUS CRW-5232AS Drives (by the ASUS defendants) and QSI SBW-242 Drives and QSI SDW-082 Drives (by the Quanta defendants). The defendants have been and still are infringing the foregoing patent by doing the following things, among others:

(a)    making or causing to be made optical storage devices that perform the patented method as part of their normal and intended operation, shipping such devices, or causing them to be shipped, to the United States, and importing such devices, or causing them to be imported, into the United States, in violation of 35 U.S.C. § 271(a);

(b)    offering to sell and selling such devices, or causing them to be offered for sale and sold, in the United States, including, without limitation, in this district, in violation of 35 U.S.C. § 271(a);

-10-

(c)     contributing to infringement of the patent by selling such devices, knowing them to be specially adapted for practicing the patented invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, and knowing of the aforesaid patent, in violation of 35 U.S.C. § 271(c);

(d)     actively inducing infringement of the patented method by knowingly selling such devices, and in advertising and promotional materials knowingly advising and urging customers to use the patented invention, in violation of 35 U.S.C. § 271(b); and

(e)     aiding and abetting other persons to infringe and cause infringement of the patent.

31.     Such infringement has injured and damaged Ricoh.   Unless enjoined by this Court, the defendants will continue their infringement, irreparably injuring Ricoh.

32.     Ricoh has demanded of the defendants that they pay it a royalty or else desist from their infringing use of the invention, but the defendants have failed and refused to do either.


**PRAYER FOR RELIEF**

WHEREFORE, Ricoh prays that the Court enter judgment ordering as follows:

(a)     adjudicating and declaring that defendants have infringed, actively induced infringement of, and contributorily infringed the foregoing patents;

(b)     preliminarily and permanently enjoining the defendants from further infringement of the foregoing patents by unauthorized use of the inventions patented therein, by defendants and their officers, agents, servants, employees, attorneys and all persons in active concert or participation with them;

-11-

(c)    that defendants account, and pay actual damages (but no less than a reasonable royalty), to Ricoh for defendants' infringement of the foregoing patents;

(d)    that defendants pay treble damages to Ricoh as provided by 35 U.S.C. § 284;

(e)    that defendants pay Ricoh's costs, expenses and prejudgment interest as provided for by 35 U.S.C. § 284;

(f)    adjudicating and declaring that this case is exceptional within the meaning of 35 U.S.C. § 285 and that Ricoh should be awarded its reasonable attorneys fees; and

(g)    granting Ricoh such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Kenneth B. Axe
(Wisconsin Bar No. 1004984)
LATHROP & CLARK LLP
740 Regent Street, Suite 400
P.O. Box 1507
Madison, WI 53701-1507
Tel: (608) 257-7766
Fax: (608) 257-1507

Mark C. Hansen (D.C. Bar No. 425930)
Richard H. Stern (D.C. Bar No. 313882)
J.C. Rozendaal (D.C. Bar No. 461735)
KELLOGG, HUBER, HANSEN, TODD
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900

-12-

Fax: (202) 326-7999

Ivan Kavrukov
COOPER & DUNHAM LLP
1185 Avenue of the Americas, 23rd Floor
New York, NY 10036
Tel: (212) 278-0400
Fax: (212) 391-0525

Attorneys for Plaintiff Ricoh Co., Ltd.

# EXHIBIT C

**From:**   Fetterman, Kenneth M.

**Sent:**   Wednesday, April 04, 2007 12:50 PM

**To:**   'Robert W. Holland'

**Cc:**   Rozendaal, J. C.

**Subject:**   FW: Ricoh v. Asustek, et al. - Subpoena to Dell

**Tracking:**   **Recipient**         **Read**

'Robert W. Holland'

Rozendaal, J. C.       Read: 4/4/2007 1:06 PM

Robert:

As you requested, please find below a list of model numbers by company.  Please use model numbers SBW-242 and SBW-243 for your initial investigation. Let me know if you have any questions.

QSI:

SBW-242; SBW-242C; SBW-081; SBW-161; SBW-241; SBW-243; SBW-245; SDW-085; SDW-086; S 082K; SDW-082; SDW-041; SDW-042.

ASUS Defs:

CRW-2410A; CRW-2410S; CRW-3212A; CRW-4012A; CRW-5224A; CRW-4816A; CRW-4824A; CR 4832A; CRW-4832AX; CRW-4832A3; CB-5216A; CRW-522452A; CRW-5232; CRW-5232A; CRW-5 CRW-5232A4; CRW-5232A-U; CRW-5232AS; CB-5216AG; DRW-1604P; DRW-1608P; DRW-1608P DRW-1608P2S; DRW-1608P3S; DRW-1612BL; DRW-1612BLT; CRW-1210R; CB-4816A; CB-5216A 5216A-U; CRW-4012A-U; CRW-5232A(X)-U; DRW-0804P; DRW1604P-D; DRW-1608; DRW-1608P DRW-1608P3S-U; DRW-1608P-D; DRW-1608P-U; DRW-1814BLT; SDRW-0804P-D; SDRW-0806T-CRW-1210R; CRW-5224A-U; CB-5216AG; DRW-0402P; DVR-104; SCB-1608-D; SCB-2408-D; SCB U; SDRW-0804; SDRW-0806T-D; TDK VELO CD 481648D/C; TDK VELO CD 522432F/C; TDK VE 522448F/C; TEAC CDW552E000; TEAC CDW552E002; TEAC CDW552E095; CRW-5232AS-U.

Thanks

```
Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999
```

```
NOTICE: This transmission is intended only for the use of the addressee and may
contain information that is privileged, confidential and exempt from disclosure
under applicable law.  If you are not the intended recipient, or the employee or
agent responsible for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution, or copying of this
```

communication is strictly prohibited.  If you have received this communication in
error, please notify the sender immediately via reply e-mail, and then destroy all
instances of this communication. Thank you.

# EXHIBIT D

**From:**    Robert W. Holland [rholland@hamiltonterrile.com]
**Sent:**    Wednesday, April 04, 2007 3:08 PM
**To:**      Fetterman, Kenneth M.
**Cc:**      Rozendaal, J. C.
**Subject:** RE: Ricoh v. Asustek, et al. - Subpoena to Dell

Can you confirm that the 242 and 243 models have been included in Dell systems?  Can you tell me which Dell models might have included the 242 and 243 models?  Finally, just to be sure, do you know the identity of any Dell employee involved in the testing or approval of the 242 and 243 models?

Thanks

**From:** Fetterman, Kenneth M. [mailto:kfetterman@khhte.com]
**Sent:** Wed 4/4/2007 11:49 AM
**To:** Robert W. Holland
**Cc:** Rozendaal, J. C.
**Subject:** FW: Ricoh v. Asustek, et al. - Subpoena to Dell

Robert:

As you requested, please find below a list of model numbers by company.  Please use model numbers SBW-242 and SBW-243 for your initial investigation. Let me know if you have any questions.

QSI:

SBW-242; SBW-242C; SBW-081; SBW-161; SBW-241; SBW-243; SBW-245; SDW-085; SDW-086; S
082K; SDW-082; SDW-041; SDW-042.

ASUS Defs:

CRW-2410A; CRW-2410S; CRW-3212A; CRW-4012A; CRW-5224A; CRW-4816A; CRW-4824A; CR
4832A; CRW-4832AX; CRW-4832A3; CB-5216A; CRW-522452A; CRW-5232; CRW-5232A; CRW-5
CRW-5232A4; CRW-5232A-U; CRW-5232AS; CB-5216AG; DRW-1604P; DRW-1608P; DRW-1608P
DRW-1608P2S; DRW-1608P3S; DRW-1612BL; DRW-1612BLT; CRW-1210R; CB-4816A; CB-5216A
5216A-U; CRW-4012A-U; CRW-5232A(X)-U; DRW-0804P; DRW1604P-D; DRW-1608; DRW-1608P
DRW-1608P3S-U; DRW-1608P-D; DRW-1608P-U; DRW-1814BLT; SDRW-0804P-D; SDRW-0806T-
CRW-1210R; CRW-5224A-U; CB-5216AG; DRW-0402P; DVR-104; SCB-1608-D; SCB-2408-D; SCB
U; SDRW-0804; SDRW-0806T-D; TDK VELO CD 481648D/C; TDK VELO CD 522432F/C; TDK VE
522448F/C; TEAC CDW552E000; TEAC CDW552E002; TEAC CDW552E095; CRW-5232AS-U.

Thanks

Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036

```
TEL: (202) 326-7988
FAX: (202) 326-7999
```

```
NOTICE: This transmission is intended only for the use of the addressee and may
contain information that is privileged, confidential and exempt from disclosure
under applicable law.  If you are not the intended recipient, or the employee or
agent responsible for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution, or copying of this
communication is strictly prohibited.  If you have received this communication in
error, please notify the sender immediately via reply e-mail, and then destroy all
instances of this communication. Thank you.
```

5/18/2007

# EXHIBIT E

| **From:** | Fetterman, Kenneth M. |
| **Sent:** | Wednesday, April 04, 2007 3:47 PM |
| **To:** | 'Robert W. Holland' |
| **Cc:** | Rozendaal, J. C. |
| **Subject:** | RE: Ricoh v. Asustek, et al. - Subpoena to Dell |

**Tracking:** | **Recipient** | **Read** |
| 'Robert W. Holland' | |
| Rozendaal, J. C. | Read: 4/4/2007 4:14 PM |

Robert-

As we discussed, we are not aware at this time of a specific Dell employee by name involved in the testing or approval of the 242 and 243 models.

We have reason to believe that the 242 and 243 are in fact used in the Dell systems. By way of example, please see the link below to Dell's website, visited today, which lists the product specifications for the QSI-SBW 242. Full text also listed below.

Let us know if you have additional questions.

Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

http://support.dell.com/support/edocs/storage/p53316/Spec.htm

# Manuals

## Manuals

Back to Contents Page

# Specification: QSI SBW-242 Slim CD-RW/DVD-ROM Drive User's Guide

General | Read Function | Write Function | Write Method | Drive Performance | Extended Specifications | Environm
Conditions |

**Specification**

| General | |
|---|---|
| **Manufacturer** | QSI |
| **Model Number** | SBW-242 |
| **Interface** | IDE/ATAPI |
| **Data Buffer Memory** | 2 MB |
| **Read Function** | |
| **Applicable Format** | DVD-ROM/Video 5, 9, 10, 18 |
| | DVD-R 3.95/4.7G |
| | DVD+R 4.7G |
| | DVD-RW: 4.7G |
| | DVD+RW: 4.7G |
| | CD-ROM Mode-1 |
| | CD-ROM XA |
| | CD-Audio |
| | Mixed Mode CD-ROM (Audio and Data Combined) |
| | Photo-CD (Single and Multi-session) |
| | CD-I, Video CD |
| | CD-Plus / CD-Extra, CD-Text |
| | Super Video CD |
| | CD-R disc (Conforming to Orange Book Part2) |
| | CD-RW disc (Conforming to Orange Book Part3) |
| **Write Function** | |
| **Applicable Format** | CD-ROM Mode-1 |
| | CD-ROM XA |
| | CD-Audio |
| | Mixed Mode (Audio and Data Combined) |
| | Video CD |
| | CD-Extra, CD-Text |
| **Write Method** | |
| **Method** | Disc at once (DAO) |
| | Session at once (SAO) |
| | Multi-session |
| | Track at once (TAO) |
| | Variable packet writing |
| | Fixed packet writing |
| **Drive Performance** | |

| Rotational Speed | Read | DVD-ROM | Single Layer: 4,800 rpm (3.5X |
| | | | Dual Layer: 3,500 rpm (2.3X ~ |
| | | DVD Video | CSS Title: 2,400 rpm (1.7X ~ 4 |
| | | DVD-R | 3.95 G: 2,400 rpm (1.7X ~ 4.2X |
| | | | 4.7 G: 2,400 rpm (1.7X ~ 4.2X |
| | | DVD+R | 2,400 rpm (1.7X ~ 4.2X CAV) t |
| | | DVD-RW | 2,400 rpm (1.7X ~ 4.2X CAV) t |
| | | DVD+RW | 2,400 rpm (1.7X ~ 4.2X CAV) t |
| | | CD-ROM | 5,110 rpm (11.2X ~ 25.8X CAV |
| | | CD-R | Non-Closed: 8X True CLV typi |
| | | | Closed: 5,110 rpm (11.2X ~ 25 |
| | | CD-RW | Non-Closed: 8X True CLV typi |
| | | | Closed: 3,000 rpm (6.3X ~ 15.1 |
| | | CD-DA | DAE: 4,000 rpm (8.4X ~ 20.1X |
| | | | Analog: 2,500 rpm (5.3X ~ 12.8 |
| | | CD Video | 2,500 rpm (5.3X ~ 12.8X CAV) |
| | Write | CD-R | 24X / 20X / 16X / 12X / 8X Zon<br>8X True CLV, 4X True CLV |
| | | CD-RW | Normal Disc: 4X True CLV |
| | | | High Speed Disc: 10X True CL |
| **Extended Specifications** | | | |
| Burst Transfer Rate | 33.3 Mbytes/s max. (Ultra DMA Mode 2) | | |
| | 16.6 Mbytes/s max. (DMA MW Mode 2) | | |
| | 16.6 Mbytes/s max. (PIO Mode 4) | | |
| Average access time | DVD-ROM | | |
| | CD-ROM | | |
| Mounting direction | Horizontal/Vertical | | |
| Loading system | Drawer Type Manual Load | | |
| Power | DC 5V/span> 5%(100 mVp-p Max, 1 KHz ~ 10 MHz) | | |
| Weight | Less than 190g | | |
| Dimensions | 128 x 129 x 12.7 mm (Width, depth, height) | | |
| Data Error Rate | DVD $10^{-15}$(hard read error) | | |
| | CD Mode-1 ECC on $10^{-12}$ (hard read error) | | |
| | CD Mode-2 ECC off $10^{-9}$ (soft read error) | | |
| MTBF | 60,000 POH (20% duty cycle, seek and read) | | |
| MTTR | Within 30 minutes | | |
| Audio Output Level | 0.725 $V_{rms}$ /span>10% | | |

| **Environmental Conditions** | | |
| | Operating | Non-Operating |
| --- | --- | --- |
| Temperature | 5C ~ 50C (41 $^0$F to 122 $^0$F)  (No air cooling) | -40C ~ 65C(-40 $^0$F to 149 $^0$F) |
| Humidity | 10% ~ 90% RH | 5% ~ 95% RH |

**From:** Robert W. Holland [mailto:rholland@hamiltonterrile.com]
**Sent:** Wednesday, April 04, 2007 3:08 PM
**To:** Fetterman, Kenneth M.

**Cc:** Rozendaal, J. C.
**Subject:** RE: Ricoh v. Asustek, et al. - Subpoena to Dell

Can you confirm that the 242 and 243 models have been included in Dell systems? Can you tell me which Dell models might have included the 242 and 243 models? Finally, just to be sure, do you know the identity of any Dell employee involved in the testing or approval of the 242 and 243 models?

Thanks

---

**From:** Fetterman, Kenneth M. [mailto:kfetterman@khhte.com]
**Sent:** Wed 4/4/2007 11:49 AM
**To:** Robert W. Holland
**Cc:** Rozendaal, J. C.
**Subject:** FW: Ricoh v. Asustek, et al. - Subpoena to Dell

Robert:

As you requested, please find below a list of model numbers by company. Please use model numbers SBW-242 and SBW-243 for your initial investigation. Let me know if you have any questions.

QSI:

SBW-242; SBW-242C; SBW-081; SBW-161; SBW-241; SBW-243; SBW-245; SDW-085; SDW-086; S 082K; SDW-082; SDW-041; SDW-042.

ASUS Defs:

CRW-2410A; CRW-2410S; CRW-3212A; CRW-4012A; CRW-5224A; CRW-4816A; CRW-4824A; CR 4832A; CRW-4832AX; CRW-4832A3; CB-5216A; CRW-522452A; CRW-5232; CRW-5232A; CRW-5 CRW-5232A4; CRW-5232A-U; CRW-5232AS; CB-5216AG; DRW-1604P; DRW-1608P; DRW-1608P DRW-1608P2S; DRW-1608P3S; DRW-1612BL; DRW-1612BLT; CRW-1210R; CB-4816A; CB-5216A 5216A-U; CRW-4012A-U; CRW-5232A(X)-U; DRW-0804P; DRW1604P-D; DRW-1608; DRW-1608F DRW-1608P3S-U; DRW-1608P-D; DRW-1608P-U; DRW-1814BLT; SDRW-0804P-D; SDRW-0806T- CRW-1210R; CRW-5224A-U; CB-5216AG; DRW-0402P; DVR-104; SCB-1608-D; SCB-2408-D; SCB U; SDRW-0804; SDRW-0806T-D; TDK VELO CD 481648D/C; TDK VELO CD 522432F/C; TDK VE 522448F/C; TEAC CDW552E000; TEAC CDW552E002; TEAC CDW552E095; CRW-5232AS-U.

Thanks

```
Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999
```

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this

communication is strictly prohibited.  If you have received this communication in
error, please notify the sender immediately via reply e-mail, and then destroy all
instances of this communication. Thank you.

5/18/2007

# EXHIBIT F

**From:**   Robert W. Holland [rholland@hamiltonterrile.com]
**Sent:**   Friday, April 13, 2007 3:55 PM
**To:**     Fetterman, Kenneth M.
**Cc:**     Rozendaal, J. C.
**Subject:** RE: *** SPAM ***RE: Ricoh v. Asustek, et al. - Subpoena to Dell

Dell is attempting to track down testing of the optical drive model you suggested.  It appears from the initial investigation that any work on that model done by Dell would have been done in China.  This has, of course, made the investigation difficult due to the time difference.  I think I was pretty clear in our initial discussions that your requests were considerabley more difficult than you imagined - they have turned out to be more difficult than I imagined.  Again, to the extent that information you learned in discovery can help Dell narrow its search (i.e., names of Dell employees involved in relevant dealings with Quanta) I encourage you to share that with me.

You are welcome to call any time although I dont really have anything to share with you at this time.

**From:** Fetterman, Kenneth M. [mailto:kfetterman@khhte.com]
**Sent:** Friday, April 13, 2007 2:45 PM
**To:** Robert W. Holland
**Cc:** Rozendaal, J. C.
**Subject:** *** SPAM ***RE: Ricoh v. Asustek, et al. - Subpoena to Dell

Robert-

Have you learned any additional information since our previous call?  I would like to set-up a time to speak on Monday, please let me know when you are available.
Thanks


Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.


**From:** Fetterman, Kenneth M.
**Sent:** Wednesday, April 04, 2007 3:47 PM
**To:** 'Robert W. Holland'
**Cc:** Rozendaal, J. C.

**Subject:** RE: Ricoh v. Asustek, et al. - Subpoena to Dell

Robert-

As we discussed, we are not aware at this time of a specific Dell employee by name involved in the testing or approval of the 242 and 243 models.

We have reason to believe that the 242 and 243 are in fact used in the Dell systems.  By way of example, please see the link below to Dell's website, visited today, which lists the product specifications for the QSI-SBW 242. Full text also listed below.

Let us know if you have additional questions.

Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

http://support.dell.com/support/edocs/storage/p53316/Spec.htm

# Manuals

Back to Contents Page

# Specification: QSI SBW-242 Slim CD-RW/DVD-ROM Drive User's Guide

General | Read Function | Write Function | Write Method | Drive Performance | Extended Specifications | Environm Conditions |

**Specification**

| General | |
|---|---|
| **Manufacturer** | QSI |

| Model Number | SBW-242 | | |
|---|---|---|---|
| Interface | IDE/ATAPI | | |
| Data Buffer Memory | 2 MB | | |
| **Read Function** | | | |
| Applicable Format | DVD-ROM/Video 5, 9, 10, 18 | | |
| | DVD-R 3.95/4.7G | | |
| | DVD+R 4.7G | | |
| | DVD-RW: 4.7G | | |
| | DVD+RW: 4.7G | | |
| | CD-ROM Mode-1 | | |
| | CD-ROM XA | | |
| | CD-Audio | | |
| | Mixed Mode CD-ROM (Audio and Data Combined) | | |
| | Photo-CD (Single and Multi-session) | | |
| | CD-I, Video CD | | |
| | CD-Plus / CD-Extra, CD-Text | | |
| | Super Video CD | | |
| | CD-R disc (Conforming to Orange Book Part2) | | |
| | CD-RW disc (Conforming to Orange Book Part3) | | |
| **Write Function** | | | |
| Applicable Format | CD-ROM Mode-1 | | |
| | CD-ROM XA | | |
| | CD-Audio | | |
| | Mixed Mode (Audio and Data Combined) | | |
| | Video CD | | |
| | CD-Extra, CD-Text | | |
| **Write Method** | | | |
| Method | Disc at once (DAO) | | |
| | Session at once (SAO) | | |
| | Multi-session | | |
| | Track at once (TAO) | | |
| | Variable packet writing | | |
| | Fixed packet writing | | |
| **Drive Performance** | | | |
| Rotational Speed | Read | DVD-ROM | Single Layer: 4,800 rpm (3.5X |
| | | | Dual Layer: 3,500 rpm (2.3X ~ |
| | | DVD Video | CSS Title: 2,400 rpm (1.7X ~ 4 |
| | | DVD-R | 3.95 G: 2,400 rpm (1.7X ~ 4.2) |
| | | | 4.7 G: 2,400 rpm (1.7X ~ 4.2X |
| | | DVD+R | 2,400 rpm (1.7X ~ 4.2X CAV) t |
| | | DVD-RW | 2,400 rpm (1.7X ~ 4.2X CAV) t |
| | | DVD+RW | 2,400 rpm (1.7X ~ 4.2X CAV) t |
| | | CD-ROM | 5,110 rpm (11.2X ~ 25.8X CAV |
| | | CD-R | Non-Closed: 8X True CLV typi |
| | | | Closed: 5,110 rpm (11.2X ~ 25 |

| | | CD-RW | Non-Closed: 8X True CLV typi |
| | | | Closed: 3,000 rpm (6.3X ~ 15.' |
| | | CD-DA | DAE: 4,000 rpm (8.4X ~ 20.1X |
| | | | Analog: 2,500 rpm (5.3X ~ 12.{ |
| | | CD Video | 2,500 rpm (5.3X ~ 12.8X CAV) |
| | Write | CD-R | 24X / 20X / 16X / 12X / 8X Zon 8X True CLV, 4X True CLV |
| | | CD-RW | Normal Disc: 4X True CLV |
| | | | High Speed Disc: 10X True CL |
| **Extended Specifications** | | | |
| **Burst Transfer Rate** | 33.3 Mbytes/s max. (Ultra DMA Mode 2) | | |
| | 16.6 Mbytes/s max. (DMA MW Mode 2) | | |
| | 16.6 Mbytes/s max. (PIO Mode 4) | | |
| **Average access time** | DVD-ROM | | |
| | CD-ROM | | |
| **Mounting direction** | Horizontal/Vertical | | |
| **Loading system** | Drawer Type Manual Load | | |
| **Power** | DC 5V/span> 5%(100 mVp-p Max, 1 KHz ~ 10 MHz) | | |
| **Weight** | Less than 190g | | |
| **Dimensions** | 128 x 129 x 12.7 mm (Width, depth, height) | | |
| **Data Error Rate** | DVD $10^{-15}$(hard read error) | | |
| | CD Mode-1 ECC on $10^{-12}$ (hard read error) | | |
| | CD Mode-2 ECC off $10^{-9}$ (soft read error) | | |
| **MTBF** | 60,000 POH (20% duty cycle, seek and read) | | |
| **MTTR** | Within 30 minutes | | |
| **Audio Output Level** | 0.725 $V_{rms}$ /span>10% | | |
| **Environmental Conditions** | | | |
| | Operating | | Non-Operating |
| **Temperature** | 5C ~ 50C (41 $^0$F to 122 $^0$F)  (No air cooling) | | -40C ~ 65C(-40 $^0$F to 149 $^0$F) |
| **Humidity** | 10% ~ 90% RH | | 5% ~ 95% RH |

**From:** Robert W. Holland [mailto:rholland@hamiltonterrile.com]
**Sent:** Wednesday, April 04, 2007 3:08 PM
**To:** Fetterman, Kenneth M.
**Cc:** Rozendaal, J. C.
**Subject:** RE: Ricoh v. Asustek, et al. - Subpoena to Dell

Can you confirm that the 242 and 243 models have been included in Dell systems?  Can you tell me which Dell models might have included the 242 and 243 models?  Finally, just to be sure, do you know the identity of any Dell employee involved in the testing or approval of the 242 and 243 models?

Thanks

**From:** Fetterman, Kenneth M. [mailto:kfetterman@khhte.com]
**Sent:** Wed 4/4/2007 11:49 AM
**To:** Robert W. Holland

**Cc:** Rozendaal, J. C.
**Subject:** FW: Ricoh v. Asustek, et al. - Subpoena to Dell

Robert:

As you requested, please find below a list of model numbers by company.  Please use model numbers SBW-242 and SBW-243 for your initial investigation. Let me know if you have any questions.

QSI:

SBW-242; SBW-242C; SBW-081; SBW-161; SBW-241; SBW-243; SBW-245; SDW-085; SDW-086; S 082K; SDW-082; SDW-041; SDW-042.

ASUS Defs:

CRW-2410A; CRW-2410S; CRW-3212A; CRW-4012A; CRW-5224A; CRW-4816A; CRW-4824A; CR 4832A; CRW-4832AX; CRW-4832A3; CB-5216A; CRW-522452A; CRW-5232; CRW-5232A; CRW-5 CRW-5232A4; CRW-5232A-U; CRW-5232AS; CB-5216AG; DRW-1604P; DRW-1608P; DRW-1608P DRW-1608P2S; DRW-1608P3S; DRW-1612BL; DRW-1612BLT; CRW-1210R; CB-4816A; CB-5216A 5216A-U; CRW-4012A-U; CRW-5232A(X)-U; DRW-0804P; DRW1604P-D; DRW-1608; DRW-1608P DRW-1608P3S-U; DRW-1608P-D; DRW-1608P-U; DRW-1814BLT; SDRW-0804P-D; SDRW-0806T- CRW-1210R; CRW-5224A-U; CB-5216AG; DRW-0402P; DVR-104; SCB-1608-D; SCB-2408-D; SCB U; SDRW-0804; SDRW-0806T-D; TDK VELO CD 481648D/C; TDK VELO CD 522432F/C; TDK VE 522448F/C; TEAC CDW552E000; TEAC CDW552E002; TEAC CDW552E095; CRW-5232AS-U.

Thanks

Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

5/18/2007

# EXHIBIT G

# HAMILTON & TERRILE, LLP

8911 North Capital of Texas Highway
Westech Center Suite 3150
Austin, Texas 78759
512.338.9100 Telephone
512.345.7225 Facsimile

April 24, 2007

*Via Facsimile No. (202)326-7999*
Ken Fetterman
Kellog, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
Summer Square
1615 M Street, N.W., Ste 400
Washington, D.C. 20036

      Re:    *Ricoh Company Ltd. v. Asustek Computer, Inc. et al.*
               Case Number 06-C-0462
               <u>Subpoena to Dell Inc.</u>

Dear Mr. Fetterman,

        This letter is in response to the subpoena dated March 19, 2007, served by you upon Dell Inc. ("Dell") in the above-referenced matter. As I have told you twice in phone conversations, you have issued the subpoena in an improper court. Dell is located in Round Rock, Texas, so the proper district is the Western District of Texas, Austin Division, as is specified by Federal Rules of Civil Procedure 45 (a)(2)(B) and (C), (c)(1) and (3)(A)(ii). In an effort to resolve the substance of this matter, this letter will set forth the response of Dell had the subpoena been properly served; however, Dell does not waive its rights to object to the subpoena as improperly served should Ricoh attempt to enforce the subpoena in the issuing court of the District of Delaware.

        In telephone conversations and e-mail communications, you have suggested that Dell initially focus its search on information relating to the testing of two specific optical drive models, SBW-242 and SBW-243. You were unable to give any additional specifics about the testing of these models by Dell to help Dell narrow its search, such as the names of Dell engineers involved, because you had not obtained that information in your discovery of the parties of the litigation. After some considerable effort, Dell has located limited information regarding the testing of one of the two models. This letter will set forth the information that Dell has learned to date. For the reasons set forth below, Dell will not produce any documents or deponents to Ricoh. After you have had a chance to review this letter, please do not hesitate to contact me directly with any questions you may have regarding Dell's production.

# HAMILTON & TERRILE, LLP

Ken Fetterman
April 24, 2007
Page 2

Briefly, the majority of the testing performed on optical drives for Dell is performed by the supplier of the optical drive. Generally, Dell's testing of optical drives is limited to integration of the optical drives in the manufacture process. The majority of Dell's own testing is now performed in China, although some testing is performed in Round Rock, Texas. Dell has located limited information regarding testing of the SBW-243 model, but was unable to locate specific information relating to the SBW-242 model in the allotted time period. Dell's understanding is that the SBW-243 model is a Phillips-labeled optical drive manufactured by a joint venture between Phillips and Quanta that is primarily used in notebook computers. Dell's notebook computers are manufactured overseas by contract companies, such as Quanta. Since the majority of the testing on the SBW-243 model was performed by Quanta, Ricoh has a duty to seek discovery relating to the testing of the SBW-243 model from Quanta, a party to the litigation, before seeking discovery from Dell. After you have obtained discovery from Quanta, if you have specific deficiencies in that discovery that you are unable to obtain from parties in the litigation, please feel free to contact me to discuss whether Dell can address such specific deficiencies.

Dell generally objects to the subpoena as unduly burdensome. Ricoh's subpoena has sixteen discovery requests modified by four pages of twenty-nine detailed definitions. Dell is a third party to the litigation and has no context with which to perform a search for relevant documents for requests having such extensive detail. As we have discussed several times, Dell is a large and international company; a search of the detail requested by Ricoh is no small undertaking, especially when given without a reasonable starting point. Without exception, each of Ricoh's document requests are for documents that are more readily available from Quanta or other litigants than from Dell. Indeed, if Dell has responsive documents, those documents would have come from Quanta. Ricoh has a duty to seek responsive documents from parties to the litigation before turning to Dell. Had Ricoh done so, then that discovery would have allowed Dell to narrow the scope of the search based upon information provided by the litigants. However, in response to Dell's repeated requests for information that would help to narrow Dell's search Ricoh provided only a list of optical drives that Ricoh alleges to infringe. Under the circumstances, Ricoh's requests clearly place an undue burden upon Dell.

Dell objects to the subpoena as improper because it was served to obtain information currently subject to a discovery dispute in your underlying litigation. In our phone conversations, you indicated that you have pursued a number of motions to compel against Quanta in your underlying litigation and that your success in some of these motions achieved after service of discovery on Dell had made a number of your requests on Dell unnecessary. Such a discovery strategy is a wholly improper abuse under the Federal Rules of Civil Procedure. Ricoh must obtain discovery from Quanta before seeking discovery from Dell, a third party. Ricoh's attempt to bypass Quanta's motion for protection by serving discovery on Dell in effect makes Dell and the District of

# HAMILTON & TERRILE, LLP

Ken Fetterman
April 24, 2007
Page 3

Delaware a proxy forum for the discovery dispute between Ricoh and Quanta which
should be heard in Wisconsin. The Federal Rules do not permit such machinations.
Neither Dell nor the District of Delaware has the time, resources or information needed to
resolve the dispute between Ricoh and Quanta. Ricoh must first seek relief in its own
action and obtain the desired information from Quanta before turning to Dell. Only then
will Dell consider cooperating where Ricoh has a compelling need for information not
available from Quanta.

Dell generally objects to the requests to the extent that they purport to extend
Dell's obligation to produce information beyond the obligations placed on Dell by the
Federal Rules of Civil Procedure. Specifically, Dell objects to the Ricoh subpoena as
unduly burdensome, overly broad, and harassing, and as seeking information that is not
relevant or reasonably calculated to lead to the discovery of admissible evidence. Dell
objects that the subpoenas place an undue burden on Dell, a non-party to the litigation,
and seek information more readily available from the parties themselves. Dell objects to
the requests to the extent that they are interpreted to call for information protected by the
attorney-client privilege or work-product doctrine. Dell objects to the requests in that
they seek documents and information having confidential trade secrets of Dell and third
parties. Dell objects to the locations indicated for production of documents and a witness
listed on the subpoena. Should Dell produce documents or a witness, Dell will do so in a
location convenient to Dell, not Ricoh.

Dell objects to requests 1-2 and 5-6 as unduly burdensome and overly broad.
These requests seek "all communications" between Dell and the parties to the litigation,
information that is necessarily available from the parties to the litigation. Even if Ricoh
can establish that some specific documents are not available, the requests as stated do not
begin to give Dell a basis for finding such documents. An effective search for documents
in a company the size of Dell needs much more precision as to who would have the
documents, to what the documents relate, and where the documents are located. Based
on its litigation discovery to date, Ricoh should know with greater precision what
documents Dell might have that were not available from the parties to the litigation, if
any, and should formulate its requests accordingly. Dell objects to the extent these
requests seek information that is not relevant or reasonably calculated to lead to the
discovery of admissible evidence. Dell objects to the extent that these requests seek
proprietary or trade secret information. Dell objects to the extent that these requests seek
information protected by the attorney-client privilege or work-product doctrine. Subject
to and without waiving the above objections, after a search of reasonable scope Dell has
found no responsive documents to requests 1 or 2.

Dell objects to requests 3 and 4 as unduly burdensome and overly broad. These
requests seek "all Joint Defense agreements" and "all indemnification agreements"
between Dell and the parties to the litigation, information that is necessarily available

# HAMILTON & TERRILE, LLP

Ken Fetterman
April 24, 2007
Page 4

from the parties to the litigation. Request 4, in particular, is offensive in that it asks Dell to review all of its agreements with the parties to the litigation for the referenced indemnification language, whether or not relevant to the litigation, when the parties to the litigation would readily be able to perform such a search. Dell objects to the extent these requests seek information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Dell objects to the extent that these requests seek proprietary or trade secret information. Dell objects to the extent that these requests seek information protected by the attorney-client privilege or work-product doctrine. Subject to and without waiving the above objections, after a search of reasonable scope Dell has found no responsive documents to request 3.

Dell objects to requests 7, 14 and 16 as unduly burdensome and overly broad and seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Requests 7, 14 and 16 as stated by Ricoh seek documents that are more readily available from the parties to the litigation than from Dell. Requests 7, 14 and 16 as stated by Ricoh seek irrelevant information to the extent that they seek information about optical drives that are not alleged to infringe. Dell notes that you have stated that Phillips is licensed to Ricoh's patents and that the SBW-243 model is a Phillips labeled drive. As is described above, testing of optical drives referenced by the requests is generally performed by the supplier of the optical drives. Further, with the SBW-243 model which is primarily designed for notebooks, computer systems that use the optical drive are assembled by OEMs in overseas locations, thus increasing the burden upon Dell to locate the requested information, particularly when an OEM is a party to the litigation. Dell objects to the extent that these requests seek proprietary or trade secret information. Subject to and without waiving the above objections, Dell's investigation with respect to the SBW-243 model indicates that documents relating to testing are more readily available from the parties to the litigation.

Dell objects to requests 8-11 as unduly burdensome and overly broad. These requests seek detailed information about optical drives provided to Dell by parties to the litigation; clearly the best source for such document is the parties themselves. Indeed, any documents that Dell might have responsive to these requests would have originated from the parties. Dell objects to these requests to the extent that they seek information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, such as information about optical drives that are not alleged to infringe. Dell objects to the extent that these requests seek proprietary or trade secret information. Dell objects to the extent that these requests seek information protected by the attorney-client privilege or work-product doctrine.

Dell objects to requests 12, 13 and 15 as unduly burdensome and overly broad and seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Requests 12 and 13 relate to marketing information

# HAMILTON & TERRILE, LLP

Ken Fetterman
April 24, 2007
Page 5

provided to Dell by parties to the litigation; clearly the best source for such documents is the parties themselves. Request 15 relates to marketing by Dell of drives having the listed features, information, if it exists at all, that is at best of questionable relevance and that Dell could gather only with substantial effort. Dell further objects to the extent that these requests seek proprietary or trade secret information.

Please do not hesitate to contact me regarding any questions that you may have about this letter.

Sincerely,

Robert W. Holland

RWH:ske

# EXHIBIT H

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209

(202) 326-7900

FACSIMILE:
(202) 326-7999

May 10, 2007

**Via Email and First Class Mail**

Robert W. Holland
Hamilton & Terrile, LLP
8911 North Capital of Texas Highway
Westech Center Suite 3150
Austin, Texas 78759

Re:     _Ricoh Co. v. ASUSTeK Computer Inc._, No. 06-C-0462-C (W.D. Wis.)-Dell
        Subpoena

Dear Rocky,

As you requested in our phone call today, I am sending you this letter to re-state the topics on which Ricoh needs information from Dell and Dr. Steenbergen. We understand that Dell intends to designate Dr. Steenbergen as a 30(b)(6) witness, and that you would like us to take a single deposition of him in his individual capacity and as a corporate representative. We agree to do both the individual and corporate depositions at the same time.

We understand that it is not convenient for Dr. Steenbergen to give testimony on May 17. In order to accommodate his schedule, and in order to give Dell time to produce documents, we are willing to postpone his deposition until May 24, as you have requested. It is our intent to only take ½ day for Dr. Steenbergen's deposition; however, if unforeseen circumstances occur during the course of the deposition, it might be prudent for Dr. Steenbergen to be available for a portion of that early afternoon of May 24th or perhaps a segment of the morning on May 25th if his schedule does not allow some leeway during the afternoon of May 24th. We don't expect to need that time, but we would like to avoid further disruption of Dr. Steenbergen's work schedule.

As we said on today's call, we will need testimony beyond that described in your email proposal of May 9th, 2007. The topics on which we need information are as follows:

1) Ricoh seeks testimony regarding Dell's use in the United States of optical disc drives made or sold by Quanta, Philips, or NU, to record information on an optical disc. We would expect that this kind of use would occur in connection with qualification, testing, or repair of

Rocky Holland, Esq.
May 10, 2007
Page 2 of 2

such optical storage devices. As explained yesterday, if the models all use these features in the same way, or Dell's use, testing, qualification, etc., is the same for each of the accused model numbers then, testimony and documents regarding a representative model and the fact that others are treated similarly would be sufficient.

2) Ricoh seeks testimony regarding how drives are marketed to Dell (including representations, comments from or communications with Quanta or Philips about the drives) and, if Dell has knowledge of the division of labor between Philips and Quanta with regard to the manufacturing, testing and invoicing for the drives. Relatedly, Ricoh seeks testimony on the path that the drives travel from the factory where Quanta makes them to Dell's possession. In particular, Ricoh seeks testimony on the point in the distribution chain at which Dell takes title to the accused drives (whether shipped from Quanta or Philips), and who invoices Dell for the drives.

3) Finally, Ricoh desires information regarding Dell's sales (price and quantity) in the United States and worldwide, by model number and by year since August of 2000, of each of the accused optical disc drives previously identified. Alternatively, Ricoh would accept information regarding Dell's sales (price and quantity), in the United States and worldwide, by model number and by year since August of 2000, of each Dell computer that could contain an accused optical disc drive. Alternatively, if it is easier to for Dell to provide information regarding the amount of U.S. sales as a fraction of Dell's worldwide sales, then, Ricoh would accept information about what percentage of Dell's worldwide sales of computers that could contain an accused optical disc drive are made in the U.S. Again, we would prefer to have this information by year and by model since August of 2000. We may be able to agree to accept more aggregated data (e.g. U.S. fraction of total sales of Dell computers that could contain an accused drive, by year), if that would help make it easier for Dell to obtain the requested information.

We understand that Dr. Steenbergen is likely to have information on the first two topics but may not have information on the third topic by May 24. If that is the case, then we are willing to take testimony on May 24 on the first two topics, and to work with you to obtain the sales information in a form and at a time that will be convenient to Dell.

Sincerely,

J.C. Rozendaal

Cc: Ken Fetterman, Esq.
Cc: Todd Wong, Esq.

# EXHIBIT I

**From:**    Robert W. Holland [rholland@hamiltonterrile.com]

**Sent:**    Monday, May 14, 2007 5:29 PM

**To:**    Fetterman, Kenneth M.

**Cc:**    Rozendaal, J. C.; Todd Wong

**Subject:** RE: Discovery agreement

Apparently, from reading your letter, you did not understand my proposal so I will try one more time to make sure I am clear:

Dell presents Dr. Steenbergen on the 24th or 25th for topics 1 and 2. Dell provides a summary of sales as best it can for topic 3, at Dr. Steenbergen's deposition if possible or otherwise as soon as the information is available. If the topic 3 information is not available at Dr. Steenbergen's deposition, Ricoh will accept a declaration rather than a deponent for the topic 3 information. Ricoh agrees not to seek another Dell deponent and the subpoena is satisfied by the production related to topic 3.

This is a framework. Please, this time, just yes or no. If the answer is yes, we can fill in the details so you can issue a valid subpoena to Dell in the Western District of Texas. If the answer is no, Dr Steenbergen will respond to his subpoena tomorrow or Wednesday.

**From:** Fetterman, Kenneth M. [mailto:kfetterman@khhte.com]
**Sent:** Mon 5/14/2007 2:26 PM
**To:** Robert W. Holland
**Cc:** Rozendaal, J. C.; Todd Wong
**Subject:** RE: Discovery agreement

Rocky-

Please see the attached letter response to your email.


Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

**From:** Robert W. Holland [mailto:rholland@hamiltonterrile.com]
**Sent:** Monday, May 14, 2007 10:06 AM

**To:** Fetterman, Kenneth M.
**Cc:** Rozendaal, J. C.; Todd Wong
**Subject:** RE: Discovery agreement

Gentlemen,

Please confirm whether or not Ricoh will request a second witness from Dell if Dell does not have the sales information that you requested at the time of Dr. Steenbergen's deposition. If Ricoh is willing to agree to only one witness, we should be able to work this out.

---

**From:** Fetterman, Kenneth M. [mailto:kfetterman@khhte.com]
**Sent:** Fri 5/11/2007 6:35 PM
**To:** Robert W. Holland
**Cc:** Rozendaal, J. C.; Todd Wong
**Subject:** RE: Discovery agreement

Rocky-

Thank you for your prompt response.

Neither Todd nor I agreed to withdraw the individual subpoena on Dr. Steenbergen until a mutually acceptable resolution had been reached with regard to the evidence that Ricoh needs in order to pursue its case against the defendants, including sales information.

In addition, I do not agree with the rest of your statements regarding the call on Wednesday. Please do let us know if Dell will agree to Ricoh's narrowly tailored offer and proposal.

Thank you

```
Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999
```

```
NOTICE: This transmission is intended only for the use of the addressee and may
contain information that is privileged, confidential and exempt from disclosure
under applicable law.  If you are not the intended recipient, or the employee or
agent responsible for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution, or copying of this
communication is strictly prohibited.  If you have received this communication in
error, please notify the sender immediately via reply e-mail, and then destroy all
instances of this communication. Thank you.
```

---

**From:** Robert W. Holland [mailto:rholland@hamiltonterrile.com]
**Sent:** Friday, May 11, 2007 7:08 PM
**To:** Fetterman, Kenneth M.
**Cc:** Rozendaal, J. C.; Todd Wong
**Subject:** RE: Discovery agreement

Ken,

5/18/2007

In our telephone conference with Todd on Wednesday, you agreed, in short, to withdraw the individual supoena on Dr. Steenbergen, to issue a new subpoena on Dell from the Western District of Texas with the limited topic of testimony relating to testing and to have Dell produce only documents relating to testing of one optical drive. Yesterday, you broadened your requests significantly by raising the issue of sales data. In our phone call, you raised the issue of a second Dell representative to testify on sales at a later date. Dell wants to complete its discovery with as little expense and inconvenience as possible. Dell is willing, and indeed, trying to cooperate. However, multiple productions over time where your requests are a moving target is neither inexpensive nor convenient. Nonetheless, I will inquire for you.

Might I suggest in the meantime that you request from Quanta an extension of discovery related to Dell? I will be happy to call Quanta's attorneys for that purpose.

Finally, I will tell you again that Dr. Steenbergen lacks personal knowledge of the testing of the accused devices. The actual testing was done by another Dell employee. He can, of course, address the topic as a Dell representative. That said, Dell will not submit to the subpoena issued from the Delaware court because any difficulties that arise during the deposition would have to be resolved by that court. You will need to issue the subpoena out of the Western District of Texas if you want a Dell representative to testify. Once again, I will agree to accept service of such a subpoena.

Rocky

---

**From:** Fetterman, Kenneth M. [mailto:kfetterman@khhte.com]
**Sent:** Fri 5/11/2007 5:22 PM
**To:** Robert W. Holland
**Cc:** Rozendaal, J. C.; Todd Wong
**Subject:** FW: Discovery agreement

Rocky-

In response to your email, Ricoh can not responsibly agree to drop its request for sales data (paragraph 3 of Ricoh's May 10 letter). Nor, given the impending discovery and motion deadlines in the underlying case, can we agree to postpone Dr. Steenbergen's deposition indefinitely while Dell searches for sales data.

It is all but inconceivable that Dell cannot identify by May 24th what fraction of Dell products that may contain the accused devices are sold in the United States. The simplest way for Dell to put the subpoena issue behind it is to produce Dr. Steenbergen (and documents) for testimony on all three requested topics on May 24th. As we have previously stated, if you cannot get the sales data by then, we will work with you to allow Dell to furnish the sales data at a later date in an efficient manner.

If you will not agree to produce Dr. Steenbergen as a corporate representative for at least topics 1 and 2 on May 24th, then Ricoh will take Dr. Steenbergen's individual deposition as noticed on May 17th.

Please let me know your preference as soon as possible, and please call if you have any questions.

Kenneth M. Fetterman
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW
Suite 400
Washington, DC  20036
TEL: (202) 326-7988
FAX: (202) 326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or

agent responsible for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution, or copying of this
communication is strictly prohibited.  If you have received this communication in
error, please notify the sender immediately via reply e-mail, and then destroy all
instances of this communication. Thank you.

5/18/2007

# EXHIBIT J

| | |
|---|---|
| **From:** | Robert W. Holland [rholland@hamiltonterrile.com] |
| **Sent:** | Friday, May 18, 2007 5:45 PM |
| **To:** | Price, Austin I. |
| **Cc:** | Rozendaal, J. C.; Fetterman, Kenneth M.; toddwong@austin.rr.com |
| **Subject:** | RE: Ricoh Co. v. ASUSTeK Computer Inc., No. 06-C-0462-C (W.D. Wis.)-Dell Subpoena |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Gentlemen,

I should have documents relating to testing of SBW-243 ready for production on Wednesday or Thursday of next week.  The documents include the testing performed by Quanta and Dell.  If you would like for me to produce the documents, please serve a subpoena on Dell from the Western District of Texas, and I will produce the documents as soon possible.  I will accept service of the subpoena, please just e-mail me a copy.

Rocky

**From:** Price, Austin I. [mailto:aprice@khhte.com]
**Sent:** Fri 5/18/2007 8:54 AM
**To:** Robert W. Holland
**Cc:** Rozendaal, J. C.; Fetterman, Kenneth M.; toddwong@austin.rr.com
**Subject:** Ricoh Co. v. ASUSTeK Computer Inc., No. 06-C-0462-C (W.D. Wis.)-Dell Subpoena

<<Ricoh Co. v. ASUSTeK Computer Inc Correspondence.PDF>>
Please see attached document regarding the above mentioned case.

05/20/2007